RAVI NARAYAN (CABN 331858)
Attorney for the United States

RAVI NARAYAN (CABN 331858)
Acting Chief, Criminal Division

DAVID J. WARD (CABN 239504)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Facsimile: (415) 436-7234
david.ward@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH SULLIVAN,<br><br>Defendant. | NO. 20-CR-00337 WHO<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF PROBATION** |

I. <u>Introduction</u>

Defendant Joseph Sullivan has filed a Notice of Motion and Motion for Early Termination of Probation. *Dkt. 283.* For the reasons described below, the government opposes defendant's request.

II. <u>Procedural Background</u>

On October 5, 2022, a jury found Sullivan guilty of one count of Obstruction of Proceedings Before a Department or Agency, in violation of 18 U.S.C. § 1505, and one count of Misprision of a Felony, in violation of 18 U.S.C. § 4. *Dkts. 1, 224.* Sullivan was convicted for concealing a massive data breach at Uber from investigators at the Federal Trade Commission while he was Uber's Chief

Security Officer. *Dkts. 1, 224.* As established at trial, over the course of months, Sullivan engaged in a conscious and calculated scheme to conceal from the FTC the theft of the personal data of millions of Uber customers, using lies to his team, other company executives and lawyers, and investigators, and by the creation of false and misleading corporate documents. He further committed a misprision of a felony by seeking to pay off the hackers who had stolen the data rather than report their criminal conduct. Sullivan's conduct was an egregious case of obstruction, committed by a high-ranking corporate security professional, trained attorney, and former Assistant United States Attorney who should have - and did - know better.

At Sullivan's sentencing, the Court adopted U.S. Sentencing Guidelines calculations, including a three-point enhancement because of Sullivan's 'substantial interference with the administration of justice" that yielded a recommended sentence of 24 to 30 months. *Dkt. 262* (Judgment).[1] The government recommended a sentence of 15 months, while Sullivan asked for Probation.

The Court sentenced Sullivan to three years of probation and imposed a $50,000 fine. *Dkt. 262* (Judgment). In explaining its sentence, the Court noted that the case was the first of its kind, and acknowledged the defendant's good character. The Court was clear, however, of the need for general deterrence in this area, stating that "if I have a similar case tomorrow, even if the defendant had the character of Pope Francis, they would be going to prison, and I want that to be known." *Dkt. 269* (Sentencing Transcript). The Court stated that "I hope everybody in the CISO community takes this as a lesson and not leniency, which is what I'm showing to you, because your failure to meet your obligations to the federal government and to protect the public is an extremely serious matter." *Id.*

Sullivan has appealed his convictions, arguing that his conduct could not support either the obstruction or misprision charges, and that he was essentially blameless. C.A. No. 23-927. C.A. no. 23-927, Sullivan's Opening Brief at pp. 1-1 ("Joe Sullivan protected hundreds of thousands of Uber drivers' personal information from public exposure – and was prosecuted for it."). Oral argument was held on October 8, 2024. https://www.ca9.uscourts.gov/media/video/?20241008/23-927/ Decision is pending.

[1] The parties agreed that a two-point variance from the recommended USSGs was warranted in because at the time, the Zero-Point Offender reduction amendment to the Guidelines had been proposed but not yet adopted. The Court concurred and noted it would factor the variance into its sentence.

Probation moved Sullivan to low-risk supervision in January 2024.[2] *Dkt. 283*. He has been on Probation for 17 months and one week, less than half of the 36 month sentence imposed by the Court.

III. Legal Standard

A Court may terminate a term of probation early, but only "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3564(c); Fed. R. Crim. P. 32.1(c). *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) (citing 18 U.S.C. § 3583(e)(1)) [3] The Court has wide discretion as to whether to grant a defendant's motion for early termination. *Id.* It is "defendant's burden to establish that he is entitled to the rarely-granted remedy of early termination." *Id.* at 824 (citing *United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006)). Before granting a motion to terminate probation or supervised release early, a Court must consider the sentencing factors in 18 U.S.C. § 3553(a). *Id.*

The Ninth Circuit has held that early termination may be warranted "in order to account for new or unforeseen circumstances" or for exceptionally good behavior by the defendant on release, though neither is categorically required. *See United States v. Miller*, 205 F.3d 1098, 1101 (9th Cir. 2000); *United States v. Ponce*, 22 F. 4th 1045, 1047 (9th Cir. 2022) ("The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.").

Courts in this district have regularly denied motions for early termination of probation or supervised release, even in cases where the defendant has complied with all of the terms of his release. *See e.g. United States v. Sabatino*, 02-CR-20067 JF (N.D. Cal. 2014) *Dkt. 150* (mere 'success on release" does not demonstrate the type of circumstances justifying early termination); *United States v. Sahakari*, 10-CR-0936 PJH (N.D. Cal. 2014), *Dkt. 32* (Sahakari's record of compliance with his terms

---

[2] In November 2023, Sullivan sought and was granted a modification of his terms of Probation, removing the special conditions requiring him to provide the probation officer with access to his financial information, and the restriction on his ability to open up new lines of credit or debts without the prior permission of probation. *Dkt. 282.*

[3] 18 U.S.C. § 3583(e)(1) provides for early termination of supervised release, employing the same mechanism and based on the same factors, including "the conduct of the defendant and the interest of justice" as 18 U.S.C. § 3564(c) does for a term of probation. This brief therefore cites authorities addressing early termination of both supervised release and probation.

of supervised release, though commendable, is expected from a person on supervision and does not constitute exceptional behavior that would warrant early termination"); *United States v. Bauer*, 09-CR-00980, 2012 WL 1259251, at *2 (N.D. Cal. 2012) ("compliance with release conditions, resumption of employment and engagement of family life are expected milestones rather than a change of circumstance rendering continued supervision no longer appropriate.").

IV. <u>Argument</u>

It is defendant Sullivan's burden to demonstrate to the Court, after the considering the factors in 18 U.S.C. § 3553(a), that early termination of his probation is warranted by the conduct of the defendant and in the interest of justice. *See Ponce*, 22 F.4th at 1047. Sullivan has not done so.

*a. Changes in Circumstances*

Sullivan cites to no new or unforeseen circumstances that render his sentence to a three-year term of probation "too harsh" or "inappropriately tailored to reflect the seriousness of the offense." In fact, Sullivan cites to no negative changes in his circumstances at all. *Dkt. 283.* Sullivan is out of custody and has few restrictions on his activities. *Id.* He has started a new company, and has been allowed to travel extensively, including internationally. *Id.* He is on low-risk probation, requiring minimal commitment of his time. *Id.* According to Sullivan's motion, he and his spouse "are raising their two youngest children in Palo Alto, California." *Id.* Sullivan, by his own account, is able to work, to volunteer in Ukraine, and to travel freely. *Id.* Nothing in his motion demonstrates any unforeseen hardship or change in circumstances that would justify cutting his term of probation in half.

*b. Conduct of the Defendant*

The government does not dispute that Sullivan has performed well while on probation. He has maintained his commitment to his family, has found gainful and interesting employment, and he timely paid his $50,000 fine and special assessment. In addition, he has be able to use his training and experience, and his personal financial resources, to help direct the delivery of humanitarian aid to Ukraine. That said, the Court was clear at sentencing that this was what was expected – that with a sentence of probation, the Court fully expected Mr. Sullivan to use his unique skills and talents in a valuable way. While Sullivan may have met these expectations, his conduct does not rise to such a level

of exceptional behavior, that, standing alone and without any concomitant hardship or change in circumstance, warrants the termination of his term of probation at this time.

*c. The § 3553(a) Factors*

In evaluating motions for early termination of supervised release or probation, the Court must, as it does at sentencing, weigh the factors set out in 18 U.S.C. § 3553(a). Taken in whole, those factors do not justify termination of Sullivan's probation less than half way through its three-year term.

*i. The Nature and Circumstances of the Offense*

Section 3553(a)(1) instructs the Court to consider the "nature and circumstances of the offense and the history and characteristics of the defendant." The nature and circumstances of the offense for which Sullivan was convicted weighs heavily against early termination of probation. Sullivan engaged in a knowing, criminal cover-up and obstruction of justice in order to conceal from federal regulators the theft and possibly public exposure of personal information of millions of Uber customers. For selfish personal and professional reasons, Sullivan did not want to admit that his company was subject to such an enormous data breach under his watch, especially coming on the heels of an earlier data breach which Sullivan assured the FTC would not repeat itself. In order to protect himself and his reputation, and to protect the financial and corporate interests of his employer, Sullivan chose to obstruct a federal investigation and to pay off the hackers who stole the data. This conduct was criminal, it was serious and willful, and this factor weighs against early termination of probation.

*ii. History and Characteristics of the Defendant*

The government does not dispute that Sullivan has an impressive history, and has demonstrated a strong commitment to his work, his family, and, following his conviction, his volunteer activity. The Court should certainly consider all of that history. However, Sullivan's background and experience also highlight Sullivan's failure of character. Mr. Sullivan has been given much, and through his hard work and intelligence, earned much. But with that success came an equally large measure of responsibility. Sullivan is a trained lawyer, a former AUSA, and held high-ranking jobs in information security at leading U.S. technology companies. In those positions, with the power and responsibilities he had, Sullivan was expected to act ethically and honestly. He was certainly required to not deceive

government regulators and other executives and lawyers at Uber. In this, he failed the character test, and this the court must also take into account in weighing his motion for early termination of probation.

*iii. Deterrence*

Section 3553(a)(2)(B) and (a)(2)(C) instruct the court to consider whether the punishment imposed provides adequate deterrence to crime and protects the public from future crimes of the defendant. The government does not believe that Sullivan poses a risk of future crime, and that probation is not needed to protect the public from the risk that he would offend again.

However, a key factor driving Sullivan's prosecution, and his sentence, was to deter this type of activity in the future *by others*. The Court was very clear in imposing its sentence that wanted to send a clear message to the CISO community that conduct such as Sullivan engaged in would not be tolerated. As the Court stated, "if I have a similar case tomorrow, even if the defendant had the character of Pope Francis, they would be going to prison, and I want that known." *Dkt. 269* (Sentencing Transcript).

The Court was right. It is imperative that those in positions of power in the CISO community understand clearly that they have an obligation to act honestly and in a forthright manner, in particular where it comes with cooperating with regulators in investigating data breaches.

Sullivan, in his motion here, states that he has accepted responsibility, even citing his statement at sentencing that "not only would [he] do things differently if he was placed in a similar situation in the future, but that he would proactively engage with the security community to promote greater collaboration with their general counsel's office." *Dkt. 283.* Sullivan states in his motion here that "he has done that repeatedly in many public speaking appearances since the sentencing." *Id.*

In fact, Sullivan has resisted the court's efforts to deter similar cover-ups of data breaches by taking the vigorous public stance in his appeal that he was wrongly prosecuted for simply "protect[ing] hundreds of thousands of Uber drivers' personal information from public exposure." C.A. no. 23-927, Sullivan's Opening Brief at pp. 1-1. Indeed, Sullivan seeks to blame the government for prosecuting him. Sullivan's Reply Brief at p. 1 ("For shame. The government prosecuted Joe Sullivan because *Uber* did not disclose a cybersecurity incident Mr. Sullivan and his team had successfully resolved."). While Sullivan is certainly entitled to prosecute his appeal as he wishes, that he has chosen to do so in a way

that suggests that his conduct was blameless undermines the deterrent effect the court intended his sentence to have, and militates against early termination of that sentence.

*iv. Kinds of Sentences and the USSG Range*

Finally, § 3553(a)(4) instructs the Court to consider the kinds of sentence, as well as the corresponding sentencing range, for the type of crime for which the defendant was convicted. Section § 3553(a)(6) instructs the Court to seek to avoid unwarranted sentencing disparities.

Here, Sullivan was facing a Guidelines sentence of 24 to 30 months, and a recommendation from the government for a 15-month custody sentence, taking into account a variance for the zero-point offender amendment to the USSGs (which was then pending). The Court sentenced Sullivan to probation, acknowledging the unique nature of the prosecution, and his good character. It is a justified sentence, but also a compassionate one. Sullivan has already received significant leniency from this Court, and in looking at the type of sentences for similar cases, and the Sentencing Guidelines range in this case, a further reduction in defendant's sentence to halve his term of probation is not warranted, and would not align with similar sentences imposed in obstruction cases.

V. Conclusion

Defendant Sullivan, a former senior cyber-security executive and attorney, was convicted of serious crimes. They were an abject betrayal of his ethics and his legal responsibilities. The jury found that Sullivan "intentionally endeavored corruptly to influence, obstruct, or impede" an investigation by the Federal Trade Commission. *Dkt. 254*. While Sullivan's behavior on probation is commendable, it is what is expected of him. It is not exceptional, and Sullivan can point to no new conditions or other hardships that would otherwise justify cutting his already non-custodial sentence in half. The government respectfully asks the Court to deny defendant's motion for early termination of probation.

Respectfully Submitted,

DATED: October 18, 2024

RAVI NARAYAN
Attorney for the United States

*/s/ David Ward*
DAVID J. WARD
Assistant United States Attorney