**Pages 1 - 12**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
VS. ) **NO. CR 20-00337 WHO**
)
JOSEPH SULLIVAN, )
)
Defendant. )
)

San Francisco, California
Thursday, November 7, 2024

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:

ISMAIL J. RAMSEY
United States Attorney
450 Golden Gate Avenue
San Francisco, California 94102
**BY: DAVID WARD**
**ASSISTANT UNITED STATES ATTORNEY**

For Defendant:

ORRICK, HERRINGTON & SUTCLIFFE
401 Union Street - Suite 3300
Seattle, Washington 98101
**BY: ARAVIND SWAMINATHAN**
**ATTORNEY AT LAW**

Also Present: **LEON DANG, U.S. PROBATION**

Remotely Reported: Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
U.S. District Court - Official Reporter

**Thursday - November 7, 2024** **10:13 a.m.**

**P R O C E E D I N G S**

---000---

**THE CLERK:** Calling criminal matter 20-337, United States versus Joseph Sullivan. Counsel, if you would please come forward and state your appearance for the record.

**MR. WARD:** Good morning, Your Honor, it is David Ward for the United States.

**MR. SWAMINATHAN:** Good morning, Your Honor, Aravind Swaminathan for Mr. Sullivan.

**MR. DANG:** Good morning, Your Honor, Leon Dang on behalf of the United States Probation Office.

**THE COURT:** All right. Welcome all. And, Mr. Sullivan, welcome.

So, is supervision impacting Mr. Sullivan's ability to provide the good works that he has been doing during probation or impacted his ability to take care of his children?

**MR. SWAMINATHAN:** Not on his children, Your Honor. I think it is a logistical thing. I don't think it is the substance of why we are here, but I think that it does impact his ability to travel. He has been very active in his work in the Ukraine traveling back and forth. I think he has a trip coming up. And there are a lot of logistical issues in doing that.

He also travels the country talking to other security

professionals on a fairly regular basis about some of the things that you spoke with him at sentencing, about some of the things that I want to address with the Court today if you have a moment.

And so, I think that that just creates -- it's a logistical challenge, Your Honor, but it doesn't restrict him from being able to do that.

**THE COURT:** And a logistical challenge meaning that he needs to call Mr. Dang, and Mr. Dang needs to respond to him?

**MR. SWAMINATHAN:** Yeah, exactly, Your Honor. And I think he is working with Mr. Dang, which is new for him. He is now, I think, on his fourth probation officer he is working with. This relationship seems to be great. I think there are past relationships that have been a little bit less responsive, and I think that has made arranging for travel a little bit more difficult; but I think Mr. Dang has been super responsive in those interactions.

**THE COURT:** Okay. Good. So, I'm -- I note that you will continue to be that way, Mr. Dang.

So, I have reviewed all of the papers. If there is something new or different or something that you think I really need to be focusing on, please go ahead.

**MR. SWAMINATHAN:** So, I will be brief, Your Honor. I mean, here is what I think I would like to share with you, and I would like to give Mr. Sullivan a chance to address the Court

if that's okay with you.

I was not trial counsel as Your Honor knows. I was not here at sentencing. When Mr. Sullivan approached me to take on his case, there was something that was very important to him, which was telling his story; and he had not been able to do that because they were getting ready for trial. No surprise.

One of the conversations that we had, without waiving anything, was being able to pursue his rights while at the same time being able to tell his story and do the work that he wanted to do, which was in that professional community of security professionals being able to talk to them about what his experience was and helping them not make the same mistakes that he had made.

That was incredibly important to them. I think ultimately, Your Honor, that's why he hired me because we created an atmosphere and an ecosystem that he was able to do that. And he has been talking freely -- including with me, Your Honor, we have appeared together -- to talk to information security professionals about all of the issues that he went through and what he would have done differently.

That has been incredibly important, I think, in that community. I think he did that with the notion of: This is what I promised Judge Orrick I would do, and I think he has carried through with that. And I would like to let him talk to you about that if you would give him a couple minutes.

I think that is different, Your Honor. I think that is somebody who is not just demonstrating contrition but demonstrating a real appreciation for the impact that this experience has had on him and a commitment to do something better. I think that is kind of emblematic of the fact that he doesn't need a probationary term anymore to teach him that lesson. This is an individual who has complied with all of his supervision terms and done all of those things but also taken to heart the message that the Court wanted to impart on him, what he should be doing as a human being to make the world a better place; and he has done that in the way that he can.

I think that's why we are here, Your Honor, not because there are logistical challenges. The probation office has been really great about pretty much everything. I think it is really about he has learned that lesson in a very profound way, and I think you should hear from him about that in making your decision.

**THE COURT:** Okay, great. Mr. Sullivan, you want to come up?

**THE DEFENDANT:** Thank you for this opportunity to talk with you. I asked my lawyer to file this motion so I could report back to you.

I took two things away from the sentencing hearing to heart that I thought you wanted me to do. Number one, I think you had a lot of concern about some of the letters that came in

and people not wanting to do the job. And so, the first message I went out and start every talk with is: My case is not a reason not to do the job.

And then the second -- the second thing is that I always say: I learned a bunch of lessons, and the first is you have got to err on the side of transparency. You have got to partner with your general counsel. You have got to put integrity into all of the processes that you implement ahead of an incident. You have got to escalate if you don't think that you 're getting the right support internally or they are pushing you in the wrong direction. And I think most importantly, we have to err on the side of partnering with the Government because in cyber security, the public sector and the private sector, neither one can do it alone.

And so, I have been taking that message out. It was hard in the beginning. You know, I didn't want to stand up in front of anybody and talk about it; but the -- but the security community that showed up for me before the sentencing hearing has been really strong and supportive of me since, and I have been able -- I think I have been able to help a lot of people through that process.

There was a -- there was a really strange coincidence in this courtroom. The first time I came in front of you, there was a proceeding that was right before mine. It was a supervised release revocation. And I was here with my wife

Prathiba, and I think it was her first realization of how serious the situation was coming into this courtroom.

And the way you handled the case with this woman Tiffany Smith and showed kind of like a patience with her and an expectation that she was going to change made me think differently about the whole case and the impact on my life.

And the crazy thing was when we came back for my sentencing hearing over a year later, she was on the docket again. I don't know how that possibly happened, but she was the case before mine again; and it was -- it was a celebration of the fact that she had turned things around in her life, and it made me want to come back in front of you for a good reason.

And so, it's been a tough journey but Prathiba, my wife, also said to me a few months ago, "You are a better person for what you went through. You are happier. You are more fulfilled. You are more motivated."

And it's true because the path that the case put me on was not a path I would have chosen obviously. I wouldn't wish what I went through on anyone; but at the end of the day, I would come out of it a different and better person. And so, thank you for that part at least.

**THE COURT:** So, Mr. Sullivan, thank you for saying that and congratulations and thank you for the work that you have been doing. Actually -- I didn't know whether I would say this -- I have a friend who told me that he had attended a --

one of the sessions that you were involved in, and he started telling me about it and I said, "Don't tell me. I don't want to hear it;" but generally what he was saying was exactly what you were saying; that you have been forthright about the issues that I was concerned about, and I was just -- I was very glad to hear that.

So, Mr. Ward, I don't know whether you want to -- I have -- I know what I -- what I intend to do, but I would be happy to hear from you as well.

**MR. WARD:** Thank you for the caveat in advance. I guess I would start with -- acknowledge what Mr. Sullivan has done, and the Government doesn't criticize his work on probation. It is impressive and commendable.

As I said, I think that's what is expected of him. That's the baseline. That's what we expect. That is not exceptional behavior on its own. We may quibble. And I don't mean to take away from what you are doing, but I just think that's the baseline.

I think the Government's concern is that the seriousness of the offense -- as this Court well knows -- and the message that the Court wanted to send to the community about its tolerance and about our tolerance is that in the legal system for this type of activity. And the concern that the Government has is that cutting his probation essentially in half doesn't underscore the message.

This Court was generous in its sentence and the Government obviously disagrees. It was a reasonable sentence but it was a generous sentence. And to come now halfway through a term of probation and say, well, we want to just cut it in half on top of what -- the consideration and the generosity of the Court, I just -- I don't think it is warranted in this situation. And obviously the Government is concerned about some of the statements in his appeal.

I understand he has a right to appeal and he has legitimate legal issues and that's fine, but comments like for shame and Mr. Sullivan was prosecuted for doing his job, I think was troubling and to me didn't convey the right message.

I haven't seen Mr. Sullivan's podcast, so I can't -- or his speeches, so I can't speak to that; but those are the concerns of the Government, and that's why we think it isn't warranted. I would think coming back maybe at two years, come back in the spring and check in where we are would be more appropriate.

**THE COURT:** Thank you.

So, here is the thing, Mr. Sullivan, your sentencing presented me with an unusual and difficult problem. I never have had a doubt that you are not going to recidivate. I didn't really have a doubt that you wouldn't do exactly what you have done because that was the kind of character that was described to me that -- throughout the case and throughout all

of the letters, and you have had a really distinguished career up until this event.

So, I was never really -- not at all concerned about that, and I also expressed at sentencing my view that what you did was really serious and seriously wrong. And in almost -- sort of an unusual sort of a white color issue, but I'm usually not very sympathetic to white collar folks but because of the unprecedented nature of the kind of case that was being brought and your character and all of the other things, I issued what I thought was a very lenient sentence; and it was really hard for me to do. I haven't done that with other white collar folks.

I did the three-year probation and it wasn't because I thought that it was going to keep you on the straight and narrow or anything, but it was to send a message of general deterrence and because I -- as I said at sentencing, if somebody else -- if there was a second prosecution and that case came before me, they could have the character of Pope Francis I said and I'd sentence them to custody.

So, coming back now if there was some impact on your ability -- some real impact on your ability to do what you have been doing or interfering with -- another thing I was impressed with was your relationship with your children. If in some way this probation was interfering with your ability to live your life in such a productive way, that would be one thing; but I just -- the idea of shortening what is already a very lenient

sentence, I think would send a bad message on the general deterrence side of things, which I never think about except for with respect to white collar cases.

But in particular this case got so much publicity, and the -- the professionals who are doing the very important work that you have done need to know where the lines are; and I really appreciate that you are helping spread that word, but that's the reason I'm not going to grant early termination, and I wouldn't have granted it two years or two-and-a-half years.

I would love for you to come back, though, and tell me -- and I would see you any time -- to tell me all -- to tell me the things that you are doing because I think they are very important, and I think you are living a very worthwhile life, and I'm really -- I'm pleased about that.

Tiffany Smith, I had more doubts about Tiffany Smith. I could encourage her a lot, but I didn't know that she would be able to get through supervision. That's not you. You stand fortunately in a very different place.

So, I'm going to deny the motion. I could have done it on the papers -- I could have done it when it came in, but I actually wanted to see you; and I'm glad that you came in and wanted to see me and let me know what you have been doing because it is very valuable. So, thank you.

**THE DEFENDANT:** Thank you.

**THE COURT:** Okay.

**MR. WARD:** Thank you, Your Honor.

(Proceedings adjourned at 10:29 a.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: December 12, 2024

Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
United States District Court - Official Reporter